Defendant-appellant, Richard Fraley, appeals his convictions by a Preble County Court of Common Pleas jury for domestic violence and vandalism, contending that they are against the manifest weight of the evidence. Appellant also appeals the sentence imposed upon him by the Preble County Court of Common Pleas pursuant to Ohio's felony sentencing law, Am. Sub. S.B. No. 2
("Senate Bill 2").
On October 13, 1997, the state filed a four count indictment against appellant. The first count charged appellant with vandalism in violation of R.C. 2909.05 (A),[1] and the remaining three counts involved charges of domestic violence in violation of R.C. 2919.25(A).[2] Each count of domestic violence addressed a different victim: (1) appellant's wife, Sandra Fraley ("Sandra"); (2) appellant's niece, Linda Kay Brown ("Kay"); and appellant's step-daughter, Andrea Lynn Thorton ("Andy"). All of the charges were fifth degree felonies. Appellant pled not guilty to all of the charges, and the matter was set for a jury trial commencing March 23, 1998.
The following evidence was revealed at trial. On September 8, 1997, Preble County Deputy Sheriff, Daniel Stevenson, was dispatched to appellant's address in Lewisburg, Ohio where it had been reported that an assault had taken place. Upon arriving, Stevenson found appellant intoxicated, irate and sweating. Stevenson testified that he found appellant in the backyard burning furniture and other household items in a bonfire that reached almost twenty feet in the air. Stevenson noted damaged property strewn about, including broken flower pots and chairs. Stevenson then took appellant into custody and began to interview witnesses. Stevenson learned that appellant had assaulted Sandra in the home, and that in the altercation he had pulled Sandra's hair. Stevenson observed a chunk of Sandra's hair in her hand. Sandra reported to Stevenson that she then ran next door to the home of her mother-in-law, Lucinda Fraley ("Lucinda"), where she called 911 and her daughter, Andy. Stevenson testified that Andy reported that after she arrived she went to question appellant about his actions, whereupon he wrestled her to the ground and began to choke her. Stevenson testified that he observed red marks about Andy's neck and shoulders. Kay reported to Stevenson that she then intervened between appellant and Andy. Preble County Deputy Sheriff, Michael Spitzer, who also responded to the dispatch, confirmed much of Stevenson's testimony with his own.
Sandra testified that she returned home from the hospital to find appellant looking like a "wild animal," burning her mother's curtain and sheers, as well as some lawn and dining room chairs. Sandra testified that appellant was throwing potted plants off the back porch, and eventually an altercation broke out between the two. Sandra testified that appellant grabbed her by the hair and threw her on the loveseat. She then testified that she fled next door to Lucinda's where she called 911 and her daughter, Andy.
Kay testified that she was at Lucinda's when Sandra came in to call 911 and Andy. Kay also testified that Sandra had a wad of hair in her hand, and that Sandra told her that appellant was responsible for pulling it out. Kay also testified that she observed Andy arrive and confront appellant at the bonfire. Kay testified that an altercation broke out between appellant and Andy, whereupon appellant was on top of Andy choking her. At that point, Kay testified that she went outside to intervene between the two.
Andy testified that she had come to the house as a result of a telephone call from her mother. Andy further testified that when she went out to question appellant he charged at her, stated he was going to kill her, wrestled her to the ground and then began to choke her. She testified that she was attempting to fight off appellant when Kay intervened.
Appellant presented testimony from two witnesses: his mother, Lucinda, and his uncle, John Davis ("John"). Lucinda testified that Sandra came over to her house on September 8, 1997 and she was not upset, but rather simply stated that appellant had been drinking. Lucinda then went next door to check on her son. She testified that she found him burning some items in a small fire in the backyard. Lucinda testified that Andy then arrived demanding to know what was going on. Lucinda testified that Andy got in appellant's face and provoked him. Lucinda admitted that an altercation ensued, but Lucinda denied ever seeing appellant choking Andy. John testified that he witnessed appellant burning a small fire, about the size of a campfire, and that he heard appellant yelling at Andy to leave his property. John admitted during cross-examination that he observed appellant on top of Andy during the altercation.
Prior to deliberations, appellant made a Crim.R. 29 motion, and the domestic violence charge with respect to Kay was dismissed. The trial court then instructed the jury and deliberations began. The jury returned guilty verdicts on the vandalism charge and the domestic violence charge with respect to Andy. The jury acquitted appellant of the domestic violence charge with respect to Sandra.
Appellant's sentencing hearing took place on April 17, 1998. At that time, the trial court considered the pre-sentence investigative report ("PSI") which included documentation of appellant's alcoholism, the victim impact statements and appellant's statement. The trial court also considered the principles and purposes of sentencing under R.C. 2929.11, and the seriousness and recidivism factors contained within R.C.2929.12. Noting that appellant had a prior conviction for domestic violence,[3] the court found that appellant "has caused physical harm to another and has a previous conviction for physical harm." The trial court further found that appellant was "not amenable to an available community control sanction" and that the shortest prison term would "demean the seriousness of the defendant's conduct." Whereupon, the trial court sentenced appellant to a ten month prison term on each offense. Stating that "the harm caused by the defendant was so great or unusual that no single prison term for any of the offenses committed as part of a single course of conduct adequately reflects the seriousness of defendant's conduct," the trial court ordered that appellant's sentences be served consecutively, for a total of twenty months of incarceration.
Appellant now appeals citing two assignments of error. In his first assignment of error, appellant attacks the sentence imposed upon him by the trial court. Specifically, appellant contends (1) that the trial court erred to the prejudice of appellant when finding that the seriousness of the offense precluded appellant from receiving the shortest prison term, and (2) that the trial court erred in imposing consecutive sentences.
Pursuant to R.C. 2953.08(G)(1), an appellate court may not disturb a sentence imposed under Senate Bill 2 unless it finds by clear and convincing evidence that the sentence is not supported by the record or is contrary to law. Clear and convincing evidence is that evidence "which will provide in the mind of the trier of facts a firm belief or conviction as the facts sought to be established." State v. Garcia (Mar. 2, 1998), Clermont App. No. CA97-04-042, unreported, at 4. The sentence imposed upon the offender should be consistent with the overriding purposes of felony sentencing: "to protect the public from future crime by the offender" and "to punish the offender." R.C. 2929.11(A).
A sentencing court has wide discretion to determine the most effective way to comply with the purposes and principles of Senate Bill 2. "A reviewing court will not interfere with a sentence unless the trial court has abused its discretion."State v. Yontz (1986), 33 Ohio App.3d 342, 343. Generally, a trial court does not abuse its discretion when imposing a sentence that is authorized by statute. State v. Smith (Oct. 13, 1997), Butler App. No. CA93-03-068, unreported, at 3.
"Before a court may sentence an offender to prison for a fifth degree felony, it must first determine whether any of the factors listed in R. C. 2929.13(B)(1)(a) through (h) exist."Smith at 3. In the instant case, the trial court considered such factors and found that R.C. 2929.13(B)(1)(c) was applicable to appellant's conduct. That is, appellant "attempted to cause or made an actual threat of physical harm to a person" and "previously was convicted of an offense that caused physical harm to a person." The trial court then considered the seriousness and recidivism factors and determined that a prison term was warranted.
Once a trial court determines that a prison term is warranted, it must then select a definite term from the range available pursuant to R.C. 2929.14(A)(1) through (5).Id. The sentencing range for a fifth degree felony, pursuant to R.C. 2929.14(A)(5), is a prison term of six to twelve months. Pursuant to R.C. 2929.14(B), "if the offender previously has not served a prison term, the court shall impose the shortest term authorized for the offense * * *." However, a trial court may override this mandate if it "finds on the record, that the shortest prison term will demean the seriousness of the offense of the offender's conduct or will not adequately protect the public from future crime by the offender or others." R.C.2929.14(B). In the instant case, after reviewing the testimony presented at trial, and the PSI which included a victim impact statement from appellant's wife, the trial court determined that to sentence appellant to the shortest prison term would, in fact, demean the seriousness of appellant's conduct. Therefore, the trial court ordered that appellant serve a ten-month term of imprisonment on each offense.
Turning to appellant's consecutive sentence challenge, we look to R.C. 2929.14(E)(3). Pursuant to R.C. 2929.14(E)(3), a trial court may impose consecutive terms if it makes specific findings. "The court must conclude (1) that consecutive sentences are necessary to protect the public from future crime or to punish the offender, and (2) that the consecutive sentences are not disproportionate to the defendant's conduct and the danger posed to the public." State v. Stevens (Sept. 21, 1998), Clinton App. No. CA98-01-001, unreported, at 12, citing R.C. 2929.14(E)(3). This court's review of the trial court's judgment entry in the instant matter reveals that the trial court indeed made such findings. Additionally, in order to impose consecutive sentences, the trial court must find that one of the factors contained in R.C. 2929.14-(E)(3)(a) though (c) exists. Id. In the instant matter the trial court specifically stated that R.C. 2929.14(E)(3)(b) was applicable to appellant's conduct. That is, that "no single prison term for any of the offenses committed as part of a single course of conduct adequately reflects the seriousness of defendant's conduct."
Upon thorough review and consideration of the trial record and the sentencing hearing, we find that the trial court did not abuse its discretion by sentencing appellant to two consecutive ten-month prison terms. There is no evidence that the trial court failed to properly consider the required statutory factors of Senate Bill 2 prior to imposing sentence, and we find that the trial court imposed a sentence that is supported by the evidence and within statutory guidelines. Accordingly, the sentence imposed by the trial court was not in error. Appellant's first assignment of error is overruled.
In his second assignment of error, appellant contends that the jury's verdict is against the manifest weight of the evidence. Specifically, appellant contends (1) that the prosecution failed to show ownership of the property which was allegedly vandalized and (2) that the prosecution failed to put forth credible evidence that appellant was the aggressor in the alleged acts of domestic violence. We disagree with both of appellant's contentions.
In determining whether a criminal conviction is against the manifest weight of the evidence, an appellate court must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of the witnesses, and determine whether in resolving conflicts in the evidence the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial granted. State v. Thompkins (1997), 78 Ohio St.3d 380,387.
With this standard in mind, we begin by addressing appellant's attack on his vandalism conviction. We note that appellant argues that the prosecution failed to put forth evidence of the allegedly vandalized property's value or ownership. However, our review of R.C. 2909.05(A), reveals that the prosecution is not required to put forth evidence of the property's value or ownership. Rather, in order to convict appellant of vandalism, the jury simply had to find that appellant knowingly caused serious physical harm to an occupied structure or any of its contents.
Following a review of the testimony presented at trial, we find that a jury could have concluded, beyond a reasonable doubt, that appellant caused serious physical harm to contents of an occupied structure. Specifically, there was evidence presented from several witnesses that appellant was burning curtains and sheers from inside the home, that appellant was burning both lawn and dining room chairs, and that appellant had caused physical harm to several flower pots that were on the back porch.
Turning our attention to appellant's attack on his domestic violence conviction with respect to Andy, we note that appellant admits that Deputy Stevenson testified that he observed red marks on Andy's neck and arms, but argues that because no investigative photographs were taken of her injuries the prosecution failed to present physical evidence of the charge. Appellant further contends that the testimony at trial was conflicting and inconsistent and, therefore, not credible.
This court's review of R.C. 2919.25(A) reveals that in order to convict appellant of domestic violence the jury had to find that appellant knowingly caused, or attempted to cause, physical harm to a family member. Following a review of the testimony presented at trial, we find that a jury could have concluded, beyond a reasonable doubt, that appellant knowingly caused physical harm to his step-daughter, Andy. Specifically, Deputy Stevenson testified that he personally observed red marks about Andy's neck and arms, while Kay testified that she personally observed appellant wrestle Andy to the ground, get on top of her, and begin to choke her. The victim herself testified that when she questioned appellant about his actions, he charged at her, wrestled her to the ground, and began to choke her. Even appellant's own witness, John, admitted on cross-examination, that he observed appellant on top of Andy.
Given the foregoing testimony, this court must honor the jury's assessment of the facts, testimony, and evidence presented at trial. We find that appellant's convictions for vandalism and domestic violence are not against the weight of the evidence. Accordingly, appellant's second assignment of error is overruled.
Judgment affirmed.
POWELL, P.J., and KOEHLER, J., concur.
[1] R.C. 2909.05(A) provides:
 No person shall knowingly cause serious physical harm to an occupied structure or any of its contents.
[2] R.C. 2919.25(A) provides:
 No person shall knowingly cause or attempt to cause physical harm to a family or household member.
[3] At trial, the parties stipulated that on October 12, 1996, appellant was convicted of domestic violence in the Eaton Municipal Court. Appellant did not serve a prison term as result of this conviction, but was instead placed on probation.